UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| IN RE DICAMBA HERBICIDES LITIGATION | ) | Master Case No. |
| | ) | 1:18-md-02820-SNLJ |
| | ) | |
| | ) | MDL No. 2820 |

*This Document Relates To All Cases*

**DEFENDANTS' PRELIMINARY STATEMENT TO THE COURT
IN ADVANCE OF THE INITIAL SCHEDULING CONFERENCE**

Defendants BASF Corporation, E. I. du Pont de Nemours and Company, Pioneer Hi-Bred International, Inc. and Monsanto Company (collectively, "Defendants") provide this preliminary statement pursuant to the Court's request in its Order Setting Initial Scheduling Conference ("Order") (ECF 7 at 4).

**I.      Overview of the Cases**

As the Court recognized in its Order, this MDL proceeding involves cases whose "claims vary widely."  There are a total of fourteen (14) cases[1] in this MDL proceeding, and, while some of the cases feature similar claims, each case is unique.  Monsanto is a defendant in all fourteen cases, BASF is a defendant in ten, and DuPont is a defendant in four.  The attached Exhibit A is a case summary that includes the information that the Court requested in its Order:  the current parties to the cases, the claims asserted, the classes sought to be certified (where applicable), and

---

[1]  This number includes the thirteen (13) cases listed in the Member Case Summary attached to the Court's Order, as well as one other related case that was tagged as a potential tag-along case and is currently pending before Judge John Ross, *Forest River Farms v. Monsanto Company*, Case No. 4:18-cv-181-JAR (E.D. Mo.).  Following the filing of the notice of tag-along, the Panel indicated in a subsequent order that no further action was necessary because this case is currently pending in the transferee court.  Monsanto believes this case should be formally transferred to the MDL and included as a Member Case.

6721139

the categories of damages sought.  Defendants are not aware of any other related cases or any other parties that are expected to be joined in any of the cases.

The Court's Order recognizes that the claims in these cases can be fairly categorized into two primary groups, and Defendants propose that the claims be grouped as:  (1) claims asserted under state tort, warranty, and consumer fraud laws for alleged damage to crops from off-target movement of a dicamba herbicide (the "Crop Claims"); and (2) claims asserted under federal and state antitrust statutes and other federal statutes (the "Antitrust Claims").  The Crop Claims and the Antitrust Claims will involve very different motion practice, discovery, expert testimony, and class certification proceedings.  Defendants therefore propose that these two categories of cases be placed on separate scheduling tracks in this MDL.

### A.     The Crop Claims

In the Crop Claims, Plaintiffs generally allege that dicamba herbicides manufactured by BASF, Monsanto, and/or DuPont were sprayed by unidentified farmers in neighboring fields over the top of crops grown from Monsanto's dicamba-tolerant Xtend soybeans and cotton seeds.[2]  Plaintiffs contend that the dicamba herbicides moved off-target and damaged a variety of Plaintiffs' non-dicamba-tolerant crops at different time periods.  For example, in one case, the plaintiff claims off-target movement of an unidentified herbicide from neighboring farming operations damaged its pumpkin and soybeans in 2017 (*Warren*).  In another case, a peach orchard operation claims multiple instances of herbicide damage not only in 2017, but in 2015 and 2016 as well (when in-crop use of dicamba-based herbicides was illegal and Defendants' dicamba herbicides at issue were not available) (*Bader*).  One farming operation claims damage from an unidentified source using Monsanto's herbicide, XtendiMax (*Cow-Mil*), and another

---

[2] Monsanto sells dicamba-tolerant cotton as Bollgard II® XtendFlex™ cotton, and dicamba-tolerant soybeans as Roundup Ready® 2 Xtend™ soybeans (collectively, "Xtend seeds").

claims multiple instances of  crop damage from any or all of three different herbicides –
Monsanto's XtendiMax, DuPont's FeXapan, and BASF's Engenia (*Harris*).

The most basic facts underlying each plaintiff's claim for alleged crop damage – *e.g.,* the
specific herbicides involved – are presently unknown.  Almost without exception, no plaintiff
has identified the particular herbicides that allegedly caused harm, the herbicide applicators, the
crops over which those herbicides were applied, or the reasons the herbicides moved off-target.
Resolution of the critical threshold issue of product identification will require individualized
discovery centered on the location of each individual plaintiff's farming operation.

Causation questions will also depend on individual, localized facts centered on each
plaintiff's farming operation.  For any herbicide involved, many possible causes of the alleged
off-target movement exist, including applicator errors and/or non-compliance with label
requirements – *e.g.*, improper boom height, inadequate buffers, failure to comply with wind
speed restrictions, improper tank mix, improper spray nozzles, local weather conditions, and tank
contamination. Discovery will necessarily involve local and field-specific investigations.   In
order to assess product identification, proximate cause, alternative causation, fact of damage, and
amount of damage, discovery will focus on:  (1) which crops were allegedly damaged;[3] (2)
whether the plants exhibited symptomology; (3) whether that symptomology resembles dicamba-
related exposure or something else such as disease, insect pressure, or other agronomic factors;

---

[3] For example, the *Bader Farms* plaintiffs claim damage to all their crops, which include
peaches, corn, soybeans, alfalfa hay, wheat, nectarines, cantaloupe, watermelons, blackberries,
strawberries, apples, tomatoes, pecans, sweet corn, and various timber trees. *Bader Farms*, No.
1:16-cv-00299-SNLJ, ECF 77, at ¶ 82 (E.D. Mo.).  The *Whitehead* plaintiffs claim damage to
soybean and watermelon crops.  *Whitehead Farms*, No. 1:18-cv-00025-SNLJ, ECF 2, at ¶¶ 25,
31-32 (E.D. Mo.).  The *Smokey Alley* plaintiffs allege damage to soybeans, organic soybeans,
pumpkins, and shade trees.  *Smokey Alley*, No. 4:17-cv-2031-SNLJ, ECF 52, at ¶¶ 54, 67, 76-77
(E.D. Mo.).  *Warren* involves soybeans and pumpkins.  *Warren*, No. 1:18-cv-00027-SNLJ, ECF
56, at ¶ 140 (E.D. Mo.).

(4) if the symptoms resemble dicamba exposure, where the source of the dicamba originated (from the plaintiff's own property, a contaminated spray tank, a neighboring farm, etc.); (5) whether dicamba herbicide was applied lawfully and according to label instructions (using the right nozzles and sprayer boom height, and applied at the right times, in the right weather conditions, etc.); (6) the identified dicamba product allegedly used (Monsanto's, BASF's, DuPont's or another company's); (7) the properties of the particular dicamba product that is the alleged source of the damage; and (8) whether the alleged symptomology produced any alleged yield loss in a particular field, and, if so, whether that yield loss can be substantiated and quantified.

Seven of the eleven cases that primarily assert Crop Claims have fully-briefed dispositive motions currently pending before the Court.  In those motions, Defendants assert a number of grounds for dismissing the Crop Claims, including (among others):  failure to plead the essential requirement of product identification; improper collective pleading as to all of the Defendants; and failure to plead proximate cause and duty, particularly as to claims based on alleged damages in 2015 and 2016, when there was no dicamba herbicide approved for in-crop use, and as to claims asserted by Arkansas plaintiffs, because Monsanto's and DuPont's dicamba herbicide products were not sold in Arkansas.

B.     The Antitrust Claims

The Antitrust Claims raise issues distinct from the Crop Claims.  For example, the plaintiffs in *Smokey Alley* attempt to allege claims under Sections 1 and 2 of the Sherman Act for attempted monopolization of a "soybean seed" market and conspiracy to unreasonably restrain trade in a "soybean seed" market.  *Smokey Alley*, No. 4:17-cv-2031-SNLJ, ECF 52, at ¶¶ 539-556.  In Defendants' pending motions to dismiss, Defendants have argued for dismissal of the

*Smokey Alley* claims because (among other reasons) Plaintiffs have not alleged: (a) that Plaintiffs have standing to bring any Antitrust Claims; (b) that there was an unlawful conspiracy under Sections 1 or 2 of the Sherman Act; or (c) that Monsanto attempted to monopolize the soybean seed market.

The other two cases asserting Antitrust Claims – *Branum* and *Forest River* – plead different antitrust theories and differing relevant markets from *Smokey Alley*.  In particular, these plaintiffs allege relevant markets for dicamba-resistant traits in soybean and cotton seeds. Furthermore, *Branum* and *Forest River* involve plaintiffs who allegedly ***purchased*** Xtend seeds, as opposed to those plaintiffs who ***did not purchase*** but were allegedly damaged by off-target movement of dicamba herbicides onto non-dicamba-tolerant crops.  The plaintiffs in these two cases claim that Monsanto released Xtend seeds knowing that dicamba off-target movement would cause damage to surrounding crops, thereby allegedly increasing demand for Xtend seeds and leading to artificially high prices for the seed.  The plaintiffs in these cases attempt to assert claims under Sections 1 and 2 of the Sherman Act for monopolization, attempted monopolization, and conspiracy to monopolize. These two cases were recently filed, and motion practice has not begun.

## II.    Class Definitions and Class Certification Discovery

One of the most significant issues in this MDL – and one cited by the Panel as a key reason for consolidation – is whether any of the plaintiffs' claims can be certified as a class action.  Consistent with Rule 23(c)(1), Defendants believe that an early resolution of the certification issue will facilitate the just and speedy disposition of these matters.  As identified in Exhibit A, for the Crop Claims, the plaintiffs seek certification of nationwide, regional, and/or statewide classes of plaintiffs whose non-dicamba-tolerant crops or plants were allegedly

damaged by off-target movement of dicamba.  The putative classes sought to be certified in *Landers* and *Smokey Alley* are the broadest classes the plaintiffs seek to certify from a geographic (national), temporal (2015 – 2017), and subject matter (all crops) perspective.

Motion practice and discovery is more advanced for the Crop Claims than the Antitrust Claims. Assuming some of the Crop Claims survive the dispositive motion stage, Defendants believe that discovery should proceed on the individual claims of the named plaintiffs asserting Crop Claims as well as on class certification issues.

Defendants are preparing a proposed Plaintiff Fact Sheet (PFS) – about which they will meet and confer with Plaintiffs' counsel – that will be the first step in discovery from the plaintiffs asserting Crop Claims.  As discussed above, discovery will focus on localized areas around each plaintiff and will seek information relating to product identification, causation, the fact of alleged damage, and the amount of any alleged damage.  Expert testimony in the class certification phase of these cases may include testimony in the fields of agronomy, weed science, product application, and plant pathology, as well testimony from experts on the particular crops Plaintiffs claim were damaged (*e.g.*, soybeans, peaches, etc.).  Depending upon the crop damage claims Plaintiffs seek to certify as class claims, there may be expert testimony from economists, accountants, and/or other financial experts.

III.   **Case Management Order Structure and Defendants' Liaison Counsel**

In light of the Court's reference in its Order to the upcoming discussions regarding a possible case management order, Temporary Liaison Counsel for Defendants initiated discussions with Plaintiffs' Temporary Liaison Counsel on a proposed case management structure.  Those discussions are preliminary and continuing, and Defendants will be prepared to discuss those issues further at the Initial Scheduling Conference.  Defendants propose that the

parties continue to discuss proposed case management structures, and that the Court set a deadline for the parties to submit either an agreed-upon proposed case management order or alternative proposals for the Court's consideration in advance of the second Scheduling Conference.

Defendants also propose that they be allowed to nominate one Liaison Counsel for each of the Defendants:  Monsanto, BASF, and DuPont/Pioneer.  Defendants would propose the following individuals as Liaison Counsel:  Dan Cox (Monsanto), John Mandler (BASF), and David Goerisch (DuPont/Pioneer).

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Christopher M. Hohn
     Jeffrey A. Masson (EDMO# 60244MO)
     Daniel C. Cox (EDMO# 38902MO)
     Jan Paul Miller (EDMO# 58112MO)
     Christopher M. Hohn (EDMO# 44124MO)
     One US Bank Plaza
     St. Louis, MO 63101
     Telephone:  (314) 552-6000
     Facsimile:  (314) 552-7000
     jmasson@thompsoncoburn.com
     dcox@thompsoncoburn.com
     jmiller@thompsoncoburn.com
     chohn@thompsoncoburn.com

*Attorneys for Defendant Monsanto Company*

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/ John J. Rosenthal
     John J. Rosenthal
     1700 K Street, N.W.
     Washington, DC 20006-3817
     Telephone:  (202) 282-5000
     Facsimile:  (202) 282-5100
     jrosenthal@winston.com

*Attorneys for Defendant Monsanto Company*

Respectfully submitted,

BRYAN CAVE

By: /s/ A. Elizabeth Blackwell
     A. Elizabeth Blackwell (EDMO# 50270MO)
     One Metropolitan Square
     211 North Broadway, Suite 3600
     St. Louis, MO 63102-2750
     Telephone:  (314) 259-2000
     Facsimile:  (314) 259-2020
     liz.blackwell@bryancave.com

*Attorneys for Defendant Monsanto Company*

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

By: /s/ John P. Mandler
    John P. Mandler
    2200 Wells Fargo Center
    90 S. Seventh St.
    Minneapolis, MN 55402
    Telephone:  (612) 766-7221
    Facsimile:  (612) 766-1600
    john.mandler@faegrebd.com

*Attorneys for Defendant BASF Corporation*

Respectfully submitted,

LIGHTFOOT FRANKLIN & WHITE LLC

By: /s/ John M. Johnson
    John M. Johnson
    The Clark Building
    400 20th Street North
    Birmingham, Alabama 35203
    Telephone:  (205) 581-0700
    Facsimile:  (205) 581-0799
    Email:    jjohnson@lightfootlaw.com

*Attorneys for Defendants E. I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc.*

Respectfully submitted,

LEWIS RICE LLC

By: /s/ C. David Goerisch
    C. David Goerisch (EDMO# 48418MO)
    600 Washington Avenue, Ste. 2500
    St. Louis, MO  63101
    Telephone:  (314) 444-7710
    Facsimile:  (314) 612-7710
    dgoerisch@lewisrice.com

*Attorneys for Defendants E. I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2018, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ Christopher M. Hohn